This is Ruston v. City of Springfield. And for the appellant, Mr. Braun, and Ms. Halbach for the past week, and Ms. Sykes for the appellate. You may proceed. May it please the Court, my name is Steve Braun. I'm Assistant Corporation Counsel for the City of Springfield. If it pleases the Court, we'd like to divide our argument approximately evenly. I will speak to subject matter jurisdiction, and my colleague Ms. Halbach will speak on the interrelation of the Labor Relations Act and the Open Meetings Act and the propriety of the injunction mandating recording of the second committee negotiation sessions. I say second committee. In this case, the original committee and the second committee has become, at least in our briefings, a term of art. The City has about 1,500 employees. The vast majority of them are represented by a little over two dozen bargaining units, and then there's a few hundred non-union workers. Rather than negotiate separately on the health benefits for each individual bargaining unit and the non-union, the City and the unions agreed a number of years ago to delegate that responsibility to a standing committee. That was the original joint committee. Since it was created in 2002, the City considered those meetings of the original committee to be exempt from the Open Meetings Act, either under the Negotiating Matters exception to the Open Meetings Act or Section 24 of the Labor Relations Act, which excludes negotiations from the Open Meetings Act. The issue never really arose until January of 2012 when the original committee met and deliberated on whether to extend health coverage benefits to civil union partners. Counsel, we're familiar with the history of this case. Okay. Is there any dispute that the trial court in May 16, 2012, granted the City's motion for a voluntary dismissal? There is a dispute on the extent to that. What do you mean, a dispute as to the extent of that? It's our position that, yes, the court at that hearing granted the motion to dismiss, and the only issue coming out of the May 17, 2012, 2013 hearing was the issue of attorneys' fees. So that was still pending? Remaining, yes. The court took that under advisement in 2012 and held it under advisement for a little over a year. And during that time, the City formed the second committee. Whether or not the second committee is exempt from the OMA, I obviously think that it is, but that's not an issue before this court. It's not an issue that's been decided at the lower court yet. That issue is one that the City believes there is no jurisdiction at this time to hear, because all the issues were resolved once the court entered its orders of July 12, 2013. It entered two orders, the attorneys' fee issue, and it dismissed the petition for rule of the show cause. At that time, on July 12, 2013, there were no issues remaining in this case. The complaint itself had been dismissed. Now, the plaintiff in this case has maintained that when they agreed to dismissal of the complaint, they did it with the right that they could raise an objection to the second committee, which they still have. Anyone can file an objection, anyone can file an action against the OMA if they believe the OMA to have been violated. It doesn't necessarily preserve in perpetuity the current case, which was dismissed, subject to taking under advisement the attorneys' fees issue. Once the attorneys' fees issue is decided on July 12, 2012, and once the petition for rule of the show cause was dismissed on July 12, there are no issues remaining. The 30 days is running. Now, the plaintiff, very shortly thereafter, filed its second petition for rule of the show cause. But again, that's a petition for rule of the show cause, why the city and why the new committee doesn't comply with the injunction that has been dissolved. It's the city's position that that second petition does not raise a post-trial motion. The court, as soon as we got the transcript of the May 2012 hearing, we filed our response to the second petition for rule of the show cause was to dismiss for one of subject matter jurisdiction. The trial court held on to jurisdiction. The trial court held that the matter revested. But the trial court did not cite any of the law pertinent to revesting. The trial court didn't cite People v. Bailey, the Illinois Supreme Court case from January of this year, or Kempa v. Murphy on the issues of revestment. The rationale for the trial court on revestment was simply it would generate excessive paperwork to have to start over again on the issue. The petition for rule of show cause sought to hold the city in contempt for what? For violating the injunction that was entered on February 15, 2012. That wasn't prospective, was it? It was prospective as of February 15, 2012. I'm sorry. But it was dissolved on May 17, 2012. Assuming that the order still existed for a moment, that would be a petition seeking to punish the city for violating a court order? Correct. That's a criminal contempt proceeding? It was civil contempt, I believe. Civil contempt means you have the keys to the jailhouse in your hands to coerce future behavior like turning over property in a marital dispute that has been declined, or paying child support that you haven't paid. What's the coercive effort to get you to do something in this case? To seek to have the city comply with the injunction. Well, but that's assuming that's really... I'm just curious as to what the nature of the civil contempt or the contempt was that they're seeking, but aside from that, is it the city's position, so we're clear, that there's nothing to stop the plaintiff from seeking the same relief with regard to the second committee that he sought with regard to the first, if it's his position that it violates the Open Meetings Act? That is correct. There is nothing preventing the plaintiff from filing a new Open Meetings Act, with the potential exception that it may be timeliness as to specific acts because you have to... Well, if that's the case, why isn't the trial court correct that as a matter of judicial economy, he should say that he was briefed best in the jurisdiction? The new action, the petition for rule of the show cause, involves new committee members. It served new committee members, and it's essentially asking them to defend and be held in contempt for violating an order that was entered and rescinded before they were joined in the party. I think a party defendant is entitled to have clear allegations against them in a clear cause of action, and not have to relate how much of this relates back to an order that's been rescinded. If there's no further questions, I'll cede the remaining appellant time to my colleague, Ms. Auerbach. May it please the Court, I'm Melissa Auerbach, I represent AFSCME. I'm also presenting argument on behalf of the other unions whose counsel are present. The trial court order refusing to dissolve the order that the city audit or record meetings of the second committee is contrary to Section 24 of the Illinois Public Labor Relations Act. Section 24 completely removes collective bargaining negotiations from the scope of the Open Meetings Act, and thus the OMA requirements of closed meetings, including creating verbatim records of closed sessions and making announcements in open sessions of the decision to go into a closed session, do not apply to collective bargaining negotiations. The trial court order requires the city effectively to comply with the OMA, even though it never found that the second committee is a public body subject to the OMA. And thus the trial court's order is contrary to both the explicit provisions and the policy of the Labor Act. The Labor Act creates a broad duty to bargain, including to negotiate both over the terms of an agreement and during the term of a collective bargaining agreement, over terms and conditions of employment, if the union and employer have not waived the right to such bargaining. The Illinois Supreme Court so held in the Central City case. Health benefits, it's undisputed, are a mandatory subject of bargaining, and an employer cannot make unilateral changes in health insurance and benefits without good faith bargaining. One of the policy reasons favoring collective bargaining is to promote harmonious labor relations. Here in the interest of promoting efficiency and harmonious labor relations, the city and a number of unions representing various bargaining units of employees joined together to establish a multi-union labor management committee for health care. The second committee is made up solely of representatives of the city and the union parties to the agreement and negotiates on an ongoing basis only over health care benefits and insurance for the city employees represented by the unions who are parties to the agreement. Any agreements reached by the committee are subject to ratification by the city in an open meeting of city council, and any decision by the city to extend to any non-union city employees or retirees any negotiated benefits negotiated by the committee for union members would also have to be made by the city in an open meeting. The California Court of Appeals in the California AWARE case cited in my brief, page 27 to 8, found in a very similar situation, the California Court of Appeals said that a joint labor management committee between a public employer and multiple unions to bargain over health benefits was engaged in collective bargaining negotiations and therefore outside the scope of the California Open Meetings Act. That act, like the Illinois Public Labor Relations Act, exempts collective bargaining negotiations from the scope of that state's Open Meetings Act. Although the trial court here failed ever to do so, it's important to distinguish between Section 24 of the Labor Act and Section 2C2 of the Open Meetings Act. Section 2C2 of the Open Meetings Act permits a public body such as the city to go into closed session to consider collective bargaining matters between the public body and its employees or unions. Such language predates the Illinois Public Labor Relations Act. It currently would allow a public body such as the city to go into closed session to consider its own bargaining proposals and strategy related to collective bargaining so that a union would not have advance notice of the city's strategy, but in that case the city would be required to comply with the Open Meetings Act requirements of closed meetings. But Section 24 of the Labor Act provides that collective bargaining negotiations themselves between the city and the unions is completely outside the scope of the Open Meetings Act rather than subject to the closed meeting requirements of the Open Meetings Act. Since the meetings of the second committee are completely outside the scope of the Open Meetings Act, the closed meeting provisions of the OMA don't apply and thus the in-camera review provisions relied on by Section 2.06A of the Open Meetings Act which allows in-camera review by a court of verbatim records of closed meetings and Section 3B of the OMA which allows in-camera review of minutes of meetings of public bodies, those don't apply here because under Section 24 the committee meetings are outside the scope of the Open Meetings Act. Such provisions do not allow the court to order the creation of audio recordings of meetings of the second committee. The court had no more authority to order that the second committee meetings be recorded than it would have authority to order any other entity that's outside the scope of the Open Meetings Act to record its meetings without finding first that the body is subject to the Act. Otherwise the court could order private corporations to audio record their meetings under the Open Meetings Act. They're no more subject to the Open Meetings Act than this committee is or vice versa. The trial court's order to make audio recordings also requires the city to violate the Labor Act's requirement that the city bargain in good faith with the unions. The Illinois Labor Relations Board relying on National Labor Relations Board and Federal Court of Appeals precedent has found that an employer violates its duty to bargain if it creates a verbatim record of collective bargaining negotiations over a union's objections. In the County of Kane case, the Labor Board said that the mere presence of a stenographer making a verbatim record at a bargaining session inhibits the free and open discussion necessary for conducting collective bargaining. The Illinois Appellate Court First District in the County of Cook Case affirmed a Labor Board decision that it was illegal for an employer to tape record a grievance meeting, which also is outside the scope of the Open Meetings Act under Section 24 of the IPLRA. Thus, the trial court's audio recording order here is contrary both to the policy and the provisions of the Labor Act. Even though the trial court did not get any recordings turned over to the plaintiff under the applicable labor law precedent, the mere recording of the meetings itself inhibits and prevents good faith collective bargaining. While the public policy of the Open Meetings Act is in favor of government meetings being open to the public, the legislature decided that the public policy favoring collective bargaining requires that collective bargaining prevails over the Open Meeting Act policy and that collective bargaining negotiations are outside the Open Meetings Act. A number of issues other than health care are issues that the public might be interested in but that are encompassed within the scope of collective bargaining. Such issues would include wages, promotions, drug and alcohol policies, discipline, layoffs, non-discrimination clauses, but under Section 24 of the labor law, collective bargaining over all these subjects are outside the scope of the Open Meetings Act. Why is that? Because the legislature decided that there is a public policy favoring free and open collective bargaining to prevent strikes and foster peaceful labor relationships. So all aspects of government should be open, but this is just so tricky that we just can't let the public watch that part? That's the decision made. Right. That's a public policy favoring collective bargaining that the collective bargaining negotiations and grievance meetings and arbitrations are not in the public. And the Illinois Freedom of Information Act also exempts from disclosure records related to collective bargaining negotiations but provides, and that's in Section 7.1.P, provides that final collective bargaining agreements are subject to disclosure under FOIA but contract proposals would be exempt from disclosure. And that is in conjunction with the policy favoring collective bargaining that it not be held in open meetings. The plaintiff in his brief to this court characterized the trial court's audio recording as a discovery order that should be reviewed for abuse of discretion. But first of all, the authority of the court to order discovery is reviewed de novo. And under the Illinois Supreme Court's Owen v. Vann decision, 105 Illinois 2nd 525, the trial court discovery order is not properly entered where there is no complaint on file. It's undisputed that the audio recording order by the trial court here was made when the complaints had been dismissed in May 2012 and there was no complaint pending before the court. Moreover, the trial court order requiring the creation of an audio recording that would not otherwise exist goes beyond the scope of a discovery order by requiring the creation of a document that wouldn't exist otherwise rather than the production of a document. If there are no questions, then the intervener needs to request that this court reverse the trial court order in order to create audio recordings. Thank you. Ms. Seitz. May it please the court? My name is Esther Seitz, and I'm here on behalf of Bruce Rushton. The appellants argue that the standard of review on both issues here is de novo. We disagree. The standard of review is deferential on both. The first issue, whether the court had jurisdiction to order the audio recording or whether there was previously a final order that was entered, depends on whether finality exists. And finality depends on what the court wanted to do, the intentions of the court. So we have to look at the actions and the words of the court to show what the court intended. So it is your position that at the May 2012 hearing, the trial court didn't dismiss this action? That is correct. On May 2012, the court granted the dissolution, the city's request to dissolve the preliminary injunction, because the first committee had been dissolved. And with that first committee no longer existing, Rushton agreed that that party could be dismissed out. But what's important about this case is that Rushton had sued both the first committee and the city. And the point of suing the city and seeking permanent injunctive relief against the city was to get an order concerning any further versions or reiterations that the city may form on the matter. But wasn't it the city that filed the motion in May 2012 for involuntary dismissal? Yes, the city asked for involuntary dismissal. And the court granted that motion to dismiss, asked to the first committee only. No, it didn't. I've got the transcript right in front of me, counsel. I understand the court said in response to Mr. Craven's statement that, so the parties understand his consent to the motion does not reflect any position at all with respect to the committee, it may not be succeeded insofar as their right to meet in closed session. The court says, I understand you're not forfeiting your right to object to any closed meetings that may be heard in the future based on the facts, so I think we understand that. So the motion to dissolve the preliminary injunction, the motion for involuntary dismissal, will be allowed. It seems to me what the court was saying there, and I don't understand the distinction between the entities, is saying that this case is over, and if they do it again in the future, if the new committee created is again, in your opinion, Mr. Craven, in violation of the Open Meetings Act, then you can seek the same relief you successfully sought in this case. Right. Isn't that what the court is saying? No, what the court said is that this action will continue as to the city when the city makes up further versions of its health committee. Obviously, Rushton has a right to bring another suit under the FOIA. That language appears nowhere in this transcript, Counsel. The transcript also, the transcript is admittedly vague on that, but it certainly does not say that the entire... The last words of the transcript, the motion for involuntary dismissal will be allowed at this time, and then we'll turn to the petition for fees. Right, and the transcript also clarifies that there was an understanding between Rushton's counsel and the court that there would be tabled for later resolution the issue of whether or not the subsequent, the second committee, was in compliance with the Open Meetings Act, because that committee, the existence of that committee, was already known to everybody, and that was already an issue that was in the pipeline, and that was an issue that the court reserved... At best, Counsel, we have to view this order as ambiguous for your argument to succeed. I'm not sure that it's ambiguous at all. So that we can then reach a stage where you can pursue this petition for rule to show cause. I'm wondering why we should be doing this. You just heard the city say, hey, the plaintiff thinks we're in violation with the second committee as the first. You already succeeded, and your TRO and your preliminary injunction get attorney's fees, and he says, let's do it again if you think we're in violation. And my question to you is, why are we here? Why didn't you do it again? Why didn't you file the same petition for TRO and for preliminary injunction that succeeded the first time, so we don't have to deal with these abstract questions about, what is this? Did the court really, should we take the court at its word that it dismissed this proceeding? Yes. When it said it did. Your Honor, that would have happened had this appeal not happened in between. There were various proceedings that happened after the May 12th hearing, and everybody actively participated. We filed pleadings, they responded, and we would have finally adjudicated the issue against the city on a final, as opposed to a preliminary basis, but we were not given that opportunity. Well, but that's assuming that the petition for rule to show cause is properly based. It's pretty much black letter law that in order to have a petition for rule to show cause, you're alleging an order was violated. That means there has to be an extant order to be violated, as opposed to the case having been dismissed. The case is dismissed, there's no order out there, is there? But the case was not dismissed. After the city, the case was not violated. So we have to view this transcript as somehow being ambiguous in what the court was saying? I think that the transcript is ambiguous if Your Honor believes that it can be read in the way that you read it. Well, I'm reading it, you know, I was a trial judge for 12 and a half years, Counsel. I know granting motions to dismiss when I see it. This is a motion to dismiss that's granted. Case over. Next case. After the first committee only. There's no such indication. As a matter of fact, the first committee is merely a creature of the city of Springfield, who is the party moving to dismiss whose motion was granted. Okay. The colloquy between plaintiff's counsel and the court reveals that the court saw that second issue in the pipeline and was going to take that on at a later stage. There are various instances in this record which are cited in our briefs where the trial court said that that was an issue that he would resolve for later. But even if Your Honor believes that Sure, I would resolve it for later when you file another petition for temporary restraining order and preliminary injunction to litigate the issue just as we have with regard to the first committee. Sure, but not in a separate suit. Part of the suit. How is it part of the suit? Am I correct that if we conclude that the court dismissed this action, there's nothing to this case? You can't prevail at this appeal? Yes. If there was no jurisdiction, then yes. Then this case is over. However, even if the court lost jurisdiction, there is still the revestment doctrine. And that revestment doctrine does apply. Now, the parties agree that prongs one through two are met. The only dispute, well, the only thing that the appellants assert is that there are, that prong three is not. And that prong requires that both parties assert positions that make the proceedings inconsistent with the merits of the prior judgment and support the setting aside of at least part of that judgment. The Supreme Court of Illinois addressed the revestment doctrine a few months ago definitively and, for lack of a better word, rather restrained the expansive interpretation of the appellate court, including our court, on the application of the revestment doctrine. That was the case of People v. Bailey. Have you decided or discussed that Bailey decision in support of your contention that the revestment doctrine applies in this case? We have not discussed it because we don't need to reach the revestment issue. However, I am happy to discuss it if the court wants to discuss it now. Well, humor me. Let's assume we need to reach it. What do you have to say about Bailey? Okay. Well, Bailey has applied the revestment doctrine. It articulated what that third prong means. Here, the so-called prior judgment is the May 17, 2012, dissolution of the preliminary injunction. If that order, as the city maintains, actually dismissed the entire suit, then it would have been inconsistent with the merits of that prior judgment for everybody, all of the four or five opposing parties, now appellants, the courts and us to continue to actively pursue this litigation without ever, for almost a year and a half, raising the issue of jurisdiction. That is exactly the type of case for which the revestment doctrine is designed. It is, as Justice Turner said, meant to preserve limited judicial resources and revestment applies. On the second issue, which is whether or not it was proper to enter the audio recording. Counselor, before you go on there, it's pretty clear that the trial court used the language, the motion to dissolve the preliminary injunction and the motion for involuntary dismissal will be allowed. To what entities were those two motions referring? I'm sorry, to what? The motions themselves. To whom, to what entities did they refer, designate, direct, or where were they directed? They were directed at the first health care committee, which is the first, I believe the first named defendant. And then the second named defendant was the city of Springfield and the dissolution did not apply as to the city, obviously because there was no need, and the motion to dismiss also did not apply to the city because the city had already imagined the second committee, which the legality under the OMA of which had yet to be decided, and the court and plaintiff's counsel agreed that that issue would be decided at a later time. And at the later time means in this litigation, because obviously anybody can always bring an Open Meetings Act suit. To say that you can later file suit means absolutely nothing, and I think it doesn't make any point to interpret the transcript so as to render this exchange between plaintiff's counsel and the court meaningless, which it would if we say that a plaintiff simply had a right to bring a suit, of course he does. The trial judge never indicates at any point, once it looked at the transcript, that it did not dismiss this case, does it? As a matter of fact, if it thought that, there would be no need for the trial court to refer it to the revestment doctrine, would there? I think you're right. I think the record here seems to be that the court first, there's various examples of the court saying that it had never ceased to have jurisdiction, and then at least one of the order where he talks about revestment, he says that... That's after the court has seen the transcript. But I think that the problem here, of course, is no documentary was made and everyone seems to have forgotten what action the court really took. That's absolutely right. Until the transcript was presented, and then said, whoops, look at this, I dismissed it. Now the court, the court whose terms you are asking us to interpret as saying I didn't really mean to dismiss it, had the opportunity to indicate that and didn't. He did. He did several times. If he did, there would be no need for him to talk about the revestment doctrine, would there? And one occasion, at the very last occasion where you're saying the order where he talked about the revestment doctrine, yes, that indicates that he acknowledged or he felt that there was a loss of jurisdiction at one point. I think that is at odds with some of the prior occasions where he said no, where he acted as though he still had jurisdiction. And there are some, there are some portions in the transcript that we have had to interpret. He never said, oh, I didn't really dismiss that case, did he? There's nothing that explicit, that's correct. Well, that's a diplomatic way of putting it, counsel. I'll move on to the Section 3 and Section 2.06e powers under the Open Meetings Act. Those specific, those provisions of the Open Meetings Act specifically provide for in-camera review. It, the statutory language is clear that in-camera review and allowing the court to gather any evidence it may need in deciding an OMA case are available in deciding these types of cases. This case was structured and brought, structured as an OMA case, brought under the Open Meetings Act. Therefore, the Section 3, the remedies provision, the OMA civil suit provisions are applicable. And Judge Otwell simply availed himself of the in-camera review procedure, which the General Assembly apparently thinks is a good idea for courts to do in OMA cases, as shown by the fact that it is mentioned twice, at least twice in the Open Meetings Act. One time in mandatory terms it says that a court shall conduct such an overview. In fact, in the FOIA cases, and as you know, FOIA and OMA cases are construed, FOIA and OMA are construed alike. In FOIA cases, Illinois' reviewing courts have consistently sent back cases to the trial court, telling trial courts to conduct in-camera review proceedings. Therefore, it was proper to attempt to do one here. The audio recording of the committee meetings are simply the best evidence of what the committee does. And what the committee does will allow the court to answer the question of whether or not what it does actually is collective bargaining. And therefore, either subject or not subject to the Open Meetings Act. This audio recording order is in the nature of the discovery order. Illinois' case law is clear that trial courts have a lot of discretion when it comes to fashioning discovery orders. The point of discovery orders is to allow the court to bring before it the best evidence and to make the best determinations possible. That's exactly what this audio recording, if produced to the court in-camera, again for the court's eyes only, will allow the courts to do. The collective bargaining cases that were cited by AFSCME are distinguishable. They assume the final result, which is that collective bargaining is taking place. Here, that determination was never made by the trial court. It's simply an issue that the trial court never got to reach because this appeal happened. They are also distinguishable because the recording there was undertaken by one of the parties to intimidate the other party at the bargaining table. Here, it is equally enforced as to everybody at the bargaining table. It is a judicial order and therefore not designed to harass one party in their bargaining negotiation. That would conclude my appellate argument. Unless you have any questions. Thank you. Rebuttal? I would be happy to entertain any follow-up questions. If there are none, we would waive our rebuttal. So when he shows up in court saying, by the way, we're here in round two for a TRO and a preliminary injunction, there will be no arguments that, hey, what are you doing here? There will be no res judicata. Just check it. All right. We'll take this matter under advisement and stay in recess until the readiness of the next case.